UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>         Respondent,<br><br>vs.<br><br>QUINTON ALLEN MANIGAULT,<br><br>         Movant, | Criminal No. 2:18-cr-782-BHH<br>Civil Action No. 2:22-cv-1281-BHH<br><br>**OPINION AND ORDER** |

This matter is before the Court upon Movant Quinton Manigault's ("Manigault") motion to vacate his sentence pursuant to 28 U.S.C. § 2255. (ECF No. 225.) For the reasons set forth below, Manigault's motion is denied and the Court grants summary judgment in favor of Respondent United States of America ("Government").

## BACKGROUND

Manigault moves to vacate his sentence under 28 U.S.C. § 2255 claiming that his counsel was ineffective for failing to challenge his status as a career offender under the Fourth Circuit's decision in *United States v. Hope*, 28 F.4th 487 (4th Cir. 2022). (ECF No. 225 at 13.) Manigault robbed the Pinnacle Bank on Folly Road at gunpoint on March 27, 2018. In August 2018 he was indicted for armed bank robbery in violation of 18 U.S.C. §§ 2113(a) and 2113(d) and with use of a firearm in furtherance of a crime of violence in violation of 18 U.S.C. § 924(c). While detained on these charges, Manigault threatened a cooperating witness on a recorded jail telephone call and was subsequently indicted for witness tampering as well. Pursuant to a written Federal Rule of Criminal Procedure

1

11(c)(1)(C) plea agreement dated September 28, 2021, Manigault pleaded guilty to one count of armed bank robbery in violation of Title 18 United States Code §§ 2113(a), 2113(d), and 2. (ECF No. 215.) In return for Manigault's guilty plea, the Government dropped the witness tampering charges as well as the charge under 18 U.S.C. § 924(c)(1)(A)(ii) for brandishing a firearm in furtherance of a crime of violence. (*Id.*) The firearm charge was punishable by up to life in prison and carried a mandatory minimum of seven (7) years. The guideline range for a career offender convicted on this charge at trial would have been 360 months to life in prison. *See* USSG § 4B1.1(c)(3).

      The parties agreed to a sentence under Rule 11(c)(1)(C). Paragraph 10 of the plea agreement provided in relevant part that "both parties agree that the appropriate disposition of this case (irrespective of any fines and/or forfeitures) is a sentence of one hundred and eighty (180) months imprisonment, followed by a three-year term of supervised release," and the plea agreement gave both parties the right to withdraw from the plea agreement if the Court declined to impose the agreed upon sentence. (ECF No. 215 at 11.) At the request of the Court and the parties, the United States Probation Office prepared a Presentence Investigation Report (PSR) in advance of the plea and sentencing. The PSR determined that Manigault was a career offender under the guidelines and calculated his guideline range as 188 to 235 months. (ECF No. 219.) As previously noted, the Government dropped the charge under 18 U.S.C. 924(c)(1)(A)(ii). Even with a three-level reduction for acceptance of responsibility, the guideline calculation on this charge pursuant to the career offender table would have been 262 to 327 months. *See* USSG § 4B1.1(c)(3). The Court accepted the proposed plea agreement, and Manigault pleaded guilty and was sentenced to 15 years in prison on October 18, 2021.

(ECF Nos. 221 & 222.)

The plea agreement contained a limited appellate waiver, and Manigault did not appeal. On April 19, 2022, Manigault filed a motion to vacate his sentence under 28 U.S.C. § 2255. (ECF No. 225.) He contends that his attorney was "constitutionally ineffective for not challenging his career offender enhancement." (*Id.* at 13.) Manigault explains that he was determined to be a career offender based on his prior South Carolina convictions for common law/strong arm robbery and possession with intent to distribute marijuana. (*Id.*) He argues that possession of marijuana with intent to distribute is no longer a predicate offense under the Armed Career Criminal Act ("ACCA") or career offender guideline pursuant to the Fourth Circuit's recent decision in *Hope*; he alleges his attorney was ineffective for failing to challenge his status as a career offender; and he claims he would have received a lighter sentence had his attorney made this challenge, and seeks to be resentenced. (*Id.* at 12–13.)

## **LEGAL STANDARDS**

**Motions to Vacate, Set Aside, or Correct a Sentence Pursuant to 28 U.S.C. § 2255**

A prisoner in federal custody may attack the validity of his sentence pursuant to 28 U.S.C. § 2255 by filing a motion in the court that imposed the sentence. To succeed on such a motion, the prisoner must prove one of the following: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court lacked jurisdiction to impose the sentence; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

The district court need not hold an evidentiary hearing on a § 2255 motion if "the motion and the files and records of the case conclusively show that the prisoner is entitled

to no relief." 28 U.S.C. § 2255(b). The determination of whether to hold an evidentiary hearing ordinarily is best left to the common sense and sound discretion of the district court. *Raines v. United States*, 423 F.2d 526, 530 (4th Cir. 1970). "When the district court denies § 2255 relief without an evidentiary hearing, the nature of the court's ruling is akin to a ruling on a motion for summary judgment." *United States v. Poindexter*, 492 F.3d 263, 267 (4th Cir. 2007).

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see* Rule 12, Rules Governing Section 2255 Proceedings ("The Federal Rules of Civil Procedure . . ., to the extent that they are not inconsistent with any statutory provisions or these rules, may be applied to a proceeding under these rules.") "A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record . . .; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). "The evidence must be viewed in the light most favorable to the non-moving party, with all reasonable inferences drawn in that party's favor. The court therefore cannot weigh the evidence or make credibility determinations." *Reyazuddin v. Montgomery Cty.*, 789 F.3d 407, 413 (4th Cir. 2015) (internal citations and quotation marks omitted).

**Ineffective Assistance of Counsel**

The Sixth Amendment to the United States Constitution provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of

Counsel for his defence." U.S. Const. amend. VI. The U.S. Supreme Court has held that this right is violated when counsel retained by, or appointed to, a criminal defendant fails to provide adequate or effective legal assistance. *See Strickland v. Washington*, 466 U.S. 668, 686 (1984). *Strickland* established a two-prong test for a claim of ineffective assistance of counsel in violation of the Sixth Amendment, under which the criminal defendant must show deficient performance and resulting prejudice. *Id.* at 687. "The performance prong of *Strickland* requires a defendant to show 'that counsel's representation fell below an objective standard of reasonableness.'" *Lafler v. Cooper*, 566 U.S. 156, 163 (2012) (quoting *Hill v. Lockhart*, 474 U.S. 52, 57 (1985)). "[C]ounsel should be 'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment,'" and courts should indulge in a "'strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.'" *Burt v. Titlow*, 134 S. Ct. 10, 17 (2013) (modifications omitted) (quoting *Strickland*, 466 U.S. at 689–90). "To establish *Strickland* prejudice a defendant must 'show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Lafler*, 566 U.S. at 163 (quoting *Strickland*, 466 U.S. at 694). "In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently." *Harrington v. Richter*, 562 U.S. 86, 111 (2011) (citations omitted). Rather, "*Strickland* asks whether it is 'reasonably likely' the result would have been different." *Id.* (citing *Strickland*, 466 U.S. at 693). Furthermore, "When analyzing counsel's performance at sentencing, prejudice exists when, but for

5

counsel's action or inaction, the movant would have received a shorter sentence." *Jennings v. United States*, 461 F. Supp. 2d 818, 823–24 (S.D. Ill. 2006) (citing *Glover v. United States*, 531 U.S. 198, 202–04 (2001); *Strickland*, 466 U.S. at 689).

## DISCUSSION

### A. Manigault was not sentenced under the guidelines, so whether or not he was classified as a career offender did not affect his sentence.

The Fourth Circuit has consistently held that "where a sentence is imposed pursuant to a Rule 11(c)(1)(C) plea agreement, the sentence is contractual and not based upon the Guidelines." *United States v. Zelazurro*, 420 F. App'x 249, 250 (4th Cir. 2011) (citing *United States v. Cieslowski*, 410 F.3d 353, 364 (7th Cir. 2005)); *United States v. Febrez*, 391 F. App'x 329, 331 (4th Cir. 2010); *United States v. Bethea*, 369 F. App'x 485, 486 (4th Cir. 2010). Sentences, like Manigault's sentence, to which defendants stipulate in a valid plea agreement that does not incorporate a guidelines calculation cannot constitute an incorrect application of the sentencing guidelines. "Absent an express statement in the plea agreement making the sentence dependent upon a guideline calculation, a sentence imposed pursuant to [a Rule 11(c)(1)(C)] plea agreement is based on the agreement itself, not on the guidelines." *United States v. Rivera-Martinez*, 607 F.3d 283, 287 (1st Cir. 2010).

Judge Harwell addressed an argument very similar to Manigault's in *Goins v. United States*, No. 4:12-CR-00669-RBH-3, 2017 WL 4923725 (D.S.C. Oct. 31, 2017). Like Manigault, Goins pleaded guilty pursuant to a Rule 11(c)(1)(C) agreement and received an agreed upon sentence below his career offender guideline range. *Id.* at *1. Like Manigault, Goins alleged that he was no longer a career offender and that his

6

attorney had been ineffective in failing to object to the career offender designation. *Id.* Relying on several of the cases cited above, Judge Harwell rejected Goins's argument, observing that "[t]he Fourth Circuit has consistently held that where a sentence is imposed pursuant to a Rule 11(c)(1)(C) plea agreement, the sentence is contractual and not based on the guidelines." *Id.* at *4 (citations omitted). Judge Harwell concluded that Goins "could not establish constitutionally deficient performance or resulting prejudice from trial counsel's failure to object to Petitioner's career offender designation" because his "career offender designation had no impact on his sentence." *Id.*

This reasoning applies to Manigault's claim as well. Manigault's 15-year sentence was based on a Rule 11(c)(1)(C) plea, not on the guidelines. Manigault would have received the same 15-year sentence pursuant to the plea he entered even if his counsel had convinced the Court that he was not a career offender.[1] Manigault cannot establish that his counsel was deficient for failing to make an objection that would have had no impact on his sentence, nor can he show any resulting prejudice.

### B. The *Hope* decision that Manigault cites is not applicable to the Career Offender Guideline.

In *United States v. Hope*, the Fourth Circuit held that the defendant's prior convictions for possession with intent to distribute marijuana proximate to a school under S.C. Code § 44-53-445 did not qualify as predicate "serious drug offenses" under the

---

[1] In fact, it would arguably have been a breach of the plea agreement for counsel to have argued that Manigault was not a career offender because, although Manigault was not sentenced under the guidelines for the reasons discussed above, the parties stipulated in paragraph 9 of the plea agreement that Manigault had "at least two prior felony convictions of either a crime of violence or a controlled substance offense" and that, "[p]ursuant to . . . §4B1.1 of the United States Sentencing Commission Guidelines, [Manigualt] is a 'Career Offender'[.]" (ECF No. 215 at 10.)

ACCA because the state's definition of "marijuana" at the time the convictions were imposed was broader than the federal definition of marijuana at the time the federal sentence was imposed. 28 F.4th at 506–507. Manigault has a 2013 conviction for possession with intent to distribute marijuana (PWID), which the PSR indicated was a "controlled substance offense" for the purposes of the Career Offender Guideline. (PSR ¶ 43, ECF No. 217 at 10.) *Hope* applies to the ACCA, which enhances the penalties for violations of 18 U.S.C. § 922(g)(1), a provision that prohibits felons from possessing firearms or ammunition. Manigault was not charged under 18 U.S.C. § 922(g)(1), so the ACCA was not applicable to his case.

Presumably, Manigault believes that his attorney should have advanced a similar argument that his PWID conviction should not have been counted as a "controlled substance offense" for purposes of the career offender guideline in USSG § 4B1.1. However, the Fourth Circuit explicitly rejected this argument as applied to the career offender guideline in *United States v. Ward*, 972 F.3d 364, 367 (4th Cir. 2020), *cert. denied*, 141 S. Ct. 2864 (2021). Manigault has cited no authority indicating that the Fourth Circuit's decision in *Hope* regarding the definition of a "serious drug offense" under the ACCA alters its previous analysis in *Ward* regarding the definition of a "controlled substance offense" under the guidelines. Significantly, these definitions are not identical. The definition of a "serious drug offense" in the ACCA explicitly incorporates Section 102 of the Controlled Substances Act into its definition of which state offenses qualify. *See* 18 U.S.C. § 924(e)(2)(A)(ii). The definition of a "controlled substance offense" under the guidelines contains no similar limitation, and the Fourth Circuit in *Ward* declined to read one in. *See Ward*, 972 F.3d at 373 (concluding there was "no textual basis to engraft the

8

federal Controlled Substances Act's definition of 'controlled substance' into the career-offender guideline" and observing that "if the Commission had intended for the federal definition of 'controlled substance' to apply for the career-offender enhancement, it had only to say so" (citations and quotation marks omitted)).

In short, even if the guideline range had any effect on Manigault's sentence (which it did not), the holding in *Hope* did not change the law in a way that has any impact on Manigault's guidelines. Accordingly, Manigault cannot establish that his attorney's performance was deficient or that he suffered any prejudice when his attorney declined to object to his status as a career offender.

### 3. Manigault's counsel was not ineffective for failing to raise an argument based on a case that had not been decided.

Even if Manigault could show that the analysis in *Hope* should be extended to the career offender guideline, his attorney was not deficient for failing to raise it because it had not yet been decided. Manigault was sentenced on October 18, 2021 (*see* ECF No. 221), but *Hope* was not decided until March 9, 2022, *see* 28 F.4th 487. Defendants who allege that counsel provided ineffective assistance for failing to anticipate a change in the law cannot satisfy the performance prong of *Strickland*. *See* 466 U.S. at 687 (holding defendant must show both deficient performance and prejudice to prevail on an ineffective assistance claim). "It is well established that an attorney cannot be labeled ineffective for failing to anticipate a future change in the law." *Moss v. Ballard*, 537 F. App'x 191, 195 (4th Cir. 2013); *see United States v. McNamara*, 74 F.3d 514, 516–17 (4th Cir. 1996); *Honeycutt v. Mahoney*, 698 F.2d 213, 217 (4th Cir. 1983); *Smith v. Murray*, 477 U.S. 527, 535–36 (1986) (holding a counsel's failure to anticipate a court's willingness to reconsider

9

precedent is not deficient performance); *Ragland v. United States*, 756 F.3d 597, 601 (8th Cir. 2014); *United States v. Fields*, 565 F.3d 290, 294 (5th Cir. 2009); *Nichols v. United States*, 563 F.3d 240, 246, 253 (6th Cir. 2009) (en banc).

The reasoning of these cases applies with even greater force here, because, as discussed above, the "change in the law" that counsel allegedly should have anticipated is not even applicable to the career offender guideline. In other words, counsel would not only have needed to predict that *Hope* would change what qualifies as a predicate under the ACCA, he would also have had to convince this Court to take the additional step of extending *Hope*'s reasoning to reach a conclusion that is still to this day contrary to binding precedent in the Fourth Circuit—to wit, the *Ward* decision. To have pursued such an argument in a case where counsel's client was already receiving a negotiated sentence that was at least 15 years less than what the client's guideline range would have been if the client had been convicted at trial on the firearm charge would have been counterproductive if not frivolous.

## **CONCLUSION**

For the reasons set forth above, Movant Manigault's motion to vacate his sentence pursuant to 28 U.S.C. § 2255 (ECF No. 225) is DENIED. The Court GRANTS summary judgment in favor of Respondent United States of America.

## CERTIFICATE OF APPEALABILITY

The governing law provides that:

> (c)(2) A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right.

> (c)(3) The certificate of appealability . . . shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

28 U.S.C. § 2253(c). A prisoner satisfies this standard by demonstrating that reasonable jurists would find this Court's assessment of his constitutional claims to be debatable or wrong and that any dispositive procedural ruling by this Court is likewise debatable. *See Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Rose v. Lee*, 252 F.3d 676, 683 (4th Cir. 2001). In this case, the legal standard for the issuance of a certificate of appealability has not been met. Therefore, a certificate of appealability is denied.

**IT IS SO ORDERED.**

/s/Bruce Howe Hendricks
United States District Judge

November 30, 2022
Charleston, South Carolina

*****

**NOTICE OF RIGHT TO APPEAL**

The parties are hereby notified that any right to appeal this Order is governed by Rules 3 and 4 of the Federal Rules of Appellate Procedure.